IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 12-367** |
| **DOROTHY JUNE BROWN** | : | |

**GOVERNMENT'S TRIAL MEMORANDUM**

      The United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Joan E. Burnes and Frank R. Costello, Jr., Assistant United States Attorneys, respectfully submits the following trial memorandum to outline the government's case.  The legal issues that may arise are addressed in a separate Motion in Limine.

I.      **Description of the Government's Case-in-Chief**

      A.      <u>**Agora Fraud - Counts One through Fourteen**</u>

      On June 29, 2005, the Pennsylvania Department of Education (PDE) granted a charter to the Agora Board of Trustees to operate a public cyber charter school located in Philadelphia, Pennsylvania, for five years beginning July 1, 2005.  The Application Approval to the Charter noted that Agora affirmed that it was not going hire an outside educational management company.  If Agora cyber charter school later chose to employ an outside educational management organization, the contract had to be submitted to PDE for approval and the charter had to be amended in writing.

1

Governance of Agora was dictated by a set of by-laws, which provided, among other things, that "[a]n affirmative vote of a majority of the members of the Board of Trustees of the charter school, duly recorded, showing how each member voted, shall be used to take action on," among other items, "[e]ntering into contracts of any kind where the amount involved exceeds $200."

Agora allegedly entered into a contract employing an outside educational management organization, The Cynwyd Group, to manage Agora, in May 2006.  The Cynwyd Group was a private for-profit company owned by defendant June Brown and Brien Gardner (whose interest she purchased in May 2008).  There is no evidence that the contract between Cynwyd and Agora was ever approved by the Agora Board of Trustees.

To make it falsely appear as if the Agora Board of Trustees had voted to enter into the contract with The Cynwyd Group, Brown caused the creation of a signed management contract between Cynwyd and Agora, dated May 10, 2006.  The signature of the President of the Board of Trustees of Agora on the contract had been forged at the direction of Brown.  The signature of the Secretary of the Agora Board had been forged as well, under circumstances which remain unknown.  Brown did not provide anyone with a copy of the alleged contract until requested to do so.  In summer, 2007, Brown gave a copy of an unsigned version of the contract between Agora and Cynwyd, dated May 30, 2006, to Agora's director of finance, to justify the payments between Agora and Cynwyd.  Brown sent PDE the version with the forged signatures in November of 2008, after PDE requested a copy of the contract in January of 2008.

The fabricated Agora-Cynwyd contract stated that Cynwyd would act as the manager of Agora, and would supervise, direct and control the "day to day business activities, management and operation" of Agora, and would provide a wide variety of management services

to Agora, including accounting services, staffing, teacher training, and maintenance of Agora's books and records.  Cynwyd was to receive 7% of Agora's revenues.

Brown also caused the creation of false board minutes and false board resolutions to make it appear as if the Agora Board of Trustees had discussed and voted on entering into a contract with Cynwyd, when, in fact, the Agora Board of Trustees had not done so. On May 11, 2006, one day after the Agora-Cynwyd contract was allegedly signed, Brown signed a management contract on behalf of Cynwyd with K12, a company that specialized in cyber school education.  Under the terms of the Cynwyd- K12 contract, K12 was to manage almost every aspect of the operation of Agora.

Beginning in December 2007, Cynwyd was paid approximately $5.6 million pursuant to the fraudulent Agora-Cynwyd contract.

In the spring of 2009, PDE conducted a management review of Agora.  As a result of the review, PDE informed Agora in June 2009 that it had violated its charter and by-laws and issued a notice of revocation of Agora's Charter, alleging, among other things, that Agora violated its charter by retaining an outside management company without first providing an executed copy of the contract to PDE and obtaining a written amendment to the charter.

In response, defendant June Brown caused Agora and Cynwyd to file civil complaints in federal court in June 2009, falsely alleging that Cynwyd was entitled to be paid fees under the fraudulent Agora-Cynwyd contract because the Agora Board of Trustees had approved it.  The lawsuits were settled in October 2009.  K12 and PDE agreed to pay Cynwyd $3,000,000.  Cynwyd agreed to terminate the Cynwyd-Agora contract and the K12-Cynwyd contract, and agreed that a replacement board of trustees for Agora would be appointed.  At the

time of the settlement, neither K12 nor PDE were aware that the Agora Board had never voted to approve the Agora-Cynwyd contract.

This scheme to defraud is the subject of Counts 1 through 14 of the Superseding Indictment.

### B. Planet Abacus Fraud - Counts Fifteen through Thirty-Seven

In July 2007, the School District of Philadelphia granted a charter for Planet Abacus. The Planet Abacus Charter stated that, prior to the execution of any management agreement, the Board of Trustees was required to submit a copy of the proposed agreement to the School District of Philadelphia for its review and comment. At Brown's request, co-defendant Joan Chalker, who had spent 18 years working for Brown, served as Chief Executive Officer of Planet Abacus.

Brown incorporated a new management company named AcademicQuest, of which she was the sole owner and officer, in June 2007. To make it look as if the Planet Abacus Board of Trustees had voted to enter into a management contract with AcademicQuest, Brown fabricated a management contract allegedly dated March 5, 2007, and directed the creation of fake board meeting minutes, which falsely stated that the AcademicQuest contract had been approved by the Planet Abacus Board of Trustees.

Beginning in November 2007, defendant Brown, as sole owner of AcademicQuest, collected management fees pursuant to the fraudulent AcademicQuest – Planet Abacus contract. Several of these payments, which were made by check, contained a memo line stating "MGT fee."

In January 2009, an auditing firm began conducting an audit of Planet Abacus's first year of operation. The auditor was given a copy of a signed management contract between

4

AcademicQuest and Planet Abacus, invoices supporting payments to AcademicQuest based upon the signed management contract, and minutes showing that the Abacus Board had approved the management contract on March 5, 2007.  The auditors questioned the propriety of the contract, because it had not been submitted to the Philadelphia School District for its review and comment.

In response to the auditor's concerns, Brown informed the auditor that he had been given the wrong contract, and that the actual contract between AcademicQuest and Planet Abacus was a consulting contract, not a management contract.  Brown orchestrated the creation of a new set of falsified contracts, falsified board meeting minutes, falsified letters and resolutions, and other documents, to make it falsely appear as if Planet Abacus was making payments to AcademicQuest under a "consulting" contract (which, presumably, would not have to be submitted to the school district), as opposed to a "management" contract.  Like the fraudulent Agora-Cynwyd contract, the fraudulent AcademicQuest contracts (multiple ones were created) contained forged signatures.

The auditors declined to accept the falsified contracts and minutes as a sufficient explanation for the questions they had concerning the AcademicQuest contracts, and requested that the school have an attorney review the contracts and minutes they were provided to determine whether Abacus was in violation of its charter in relation to the contract.  The auditors never received this information.

From November 2007, through April 2011, AcademicQuest was paid approximately $705,000 pursuant to the fraudulent AcademicQuest- Planet Abacus contracts.

This fraud is the subject of Counts 15 through 37.

C.   **Count 53 – Conspiracy to Obstruct Justice**

Brown is charged in Count 53 with conspiring to obstruct justice from at least August 2008 through April 2012. The object of the conspiracy is the alteration and falsification of records, which was carried out following the issuance of federal grand jury subpoenas pursuant to investigations of entities affiliated with Brown, which included The Cynwyd Group, AcademicQuest, Agora, and Planet Abacus. The majority of the documents which are the subject of the conspiracy to obstruct justice pertain to the frauds described above.

As part of the grand jury investigations which resulted in the indictment, grand jury subpoenas were issued in 2008 to a number of entities and individuals, including all of the schools and entities founded by Brown – Agora, Planet Abacus, Laboratory, Ad Prima, Main Line Academy, The Cynwyd Group, and AcademicQuest. For each entity, the grand jury requested, among other things, production of "Any and all documents and records from November 1, 2003 to the present, including, but not limited to, financial records, books and ledgers, bank statements, invoices, checks, contracts." The investigating agents also began to conduct interviews of present and former employees of these entities beginning in 2008.

Based on information gathered during the first grand jury investigation, a second investigation began in 2010. The subjects of the grand jury investigations included the following inquiries:

1)   Whether Brown, Cynwyd, and AcademicQuest defrauded Agora and Planet Abacus and their sources of funding; and

2)   Whether the boards of trustees of Agora and Planet Abacus had voted to approve contracts, leases, loans and other actions affecting their finances, including contracts with Brown's private companies.

6

As part of the 2010 grand jury investigation, subpoenas were issued to The Cynwyd Group, LLC and AcademicQuest, LLC in February 2012, requiring the production of various records, including, among other items, contracts, financial records, lease agreements, and attorney billing records.  The subpoena issued to AcademicQuest also required the production of records regarding the individuals whose forged signatures appeared as witnesses on a consulting contract between Planet Abacus and AcademicQuest, dated March 5, 2007.

Between August 2008 through April 2012, defendant Brown caused the alteration and falsification of a large number of documents, including contracts, financial records, board meeting minutes, board resolutions, letters, billing records, and other records pertaining to the schools and Brown's private companies, after federal grand jury subpoenas for records were served in 2008 and the investigation was underway.  The beneficiary of these false documents was the defendant.  It was in her interest to disguise the true state of financial affairs and impede a federal investigation into the circumstances under which she obtained millions of dollars from Agora and Abacus, which were charter schools funded with public money.

Some of the overt acts in furtherance of the conspiracy to obstruct justice are also the subjects of the individual obstruction counts charged in Counts 54, 55, 57, 58, 61 and 62, which are described below.

D. **Count 54 (May 6, 2006 Agora Special Saturday Board Meeting Minutes)**

Count 54 charges defendant Brown with obstruction of justice for knowingly altering and falsifying the May 6, 2006 Agora Board meeting minutes.  The evidence will show that the defendant caused the creation of the false minutes on March 11, 2009, after they were requested by Pennsylvania Department of Education auditor Keith Miller, and that they were created with the intent to impede or influence one of the matters which was under investigation

7

by the auditors, which was whether Agora was being operated by an independent board of trustees, in accordance with its charter and the laws governing the operation of charter schools in Pennsylvania.

The evidence will show that during a visit to Agora by auditors from the Pennsylvania Department of Education on March 11, 2009, the defendant was requested to produce the minutes of the meetings of the Agora Board of Trustees.  The minutes that Brown initially produced were not complete, and she was asked for the minutes of the May 6, 2006 meeting, which were given to Miller at the end of the day.  They were faxed to the offices where the audit was being conducted approximately two hours after they had been requested.

The minutes described a Saturday board meeting that allegedly took place on May 6, 2006, at 1 p.m., during which board members unanimously approved the Agora-Cynwyd contract, which formed the basis for payment of 5.6 million dollars to Cynwyd.  The evidence will show that the Agora-Cynwyd contract was never presented to or approved by the Agora Board, and that Brown was the only person who benefitted from creation of the false minutes.  The evidence will also show that the only version of these minutes found on the computers recovered from the building where Brown's office was located had been created on March 11, 2009, the same day the minutes were produced to the auditors.

      E.      **Count 55 (March 5, 2007 Planet Abacus Resolution)**

Count 55 charges defendant Brown (and defendant Joan Chalker) with obstruction of justice for knowingly falsifying a Planet Abacus Charter School board resolution dated March 5, 2007 with intent to impede a matter within the jurisdiction of federal agencies.  Specifically, Count 55 charges Brown with causing the fabrication of a resolution dated March 5, 2007 entitled "Resolution Approving Contracting with AcademicQuest for Consulting Services."

8

The March 5, 2007 Planet Abacus Resolution referred to a Planet Abacus board meeting that allegedly took place on March 5, 2007, during which board members supposedly voted on a resolution to approve a consulting contract with AcademicQuest, a company owned by Brown.  Chalker typed this fraudulent document in 2009 at Brown's request.  The evidence will show that two other electronic copies of this document which were recovered from one of the office computers and a flash drive were created on July 28, 2009, and the author was identified as Joan Chalker.  A copy of a similar resolution, also dated March 5, 2007, was provided to auditors in 2010.

These false documents supported one of the primary misrepresentations perpetuated by Brown – that the Abacus Board of Trustees approved a management contract, then a consulting contract, with AcademicQuest, and their creation was in furtherance of Brown's attempt to cover up the fact that neither contract was ever approved by the board of trustees of Planet Abacus.

### F.      Count 57 (Laboratory Benefits Policy dated June 25, 2007)

Count 57 charges Brown (and Chalker) with knowingly falsifying a June 25, 2007 Laboratory Benefits Policy with the intent to impede or influence a matter within the jurisdiction of the Department of Education and the FBI.  The falsification involves the insertion of a retroactivity clause, after auditor Lawrence Maulo questioned whether the June 25, 2007 leave policy he was given in 2009 justified the payment of unused leave time that Brown and Chalker accumulated before the date of the policy.[1]

---

[1]      The alleged criminal conduct is not - as was charged in dismissed Counts 51 and 52 – falsely misrepresenting that the Lab board voted to approve the June 25, 2007 benefits policy prior to Brown and Chalker receiving Lab checks in April of 2009 for their unused leave dating back to 1998.  The conduct which is the subject of Count 57 is the insertion of a retroactivity

9

The evidence will showed that as of 2009, Laboratory Charter School had sick and vacation leave policies dating from 2002 and 2003, which did not permit employees to accumulate unused leave going back more than 18 months.  In 2009, approximately six months after defendant Brown and 18 months after defendant Joan Chalker stopped working for Laboratory Charter School, Brown told Chalker and Anthony Smoot that she and Chalker were entitled to payouts for their unused vacation and sick time dating back to 1998.  In April of 2009, Smoot issued checks to them for $144,939.10 (Brown) and $69,156.24 (Chalker).

The payouts were questioned by auditor Maulo in the fall of 2009.  In response, auditor Maulo was given written leave policies dated June 25, 2007, which had been drafted in 2009 at the direction of Brown.  The policy, which applied to Brown and Chalker, allowed unused sick and vacation days to accumulate without limitation.  Maulo questioned whether the 2007 policy, which he first received in 2009, justified payments for unused leave accumulated before 2007 because it did not state that it was retroactive.

In response, Brown told Chalker to revise the June 25, 2007 policy and make it retroactive to satisfy Maulo's concerns, which she did.  The version of the June 25, 2007 policy containing the retroactivity clause that was found on one of Chalker's flash drives had a creation date of December 21, 2009.  The evidence will show that the policy was revised in response to Maulo's inquiry, and the subject of the inquiry was within the jurisdiction of the federal agencies who investigated this case.

---

clause in the June 25, 2007 policy, with the intent to obstruct justice.  This conduct is also charged as Overt Act 21 of Count 53, the conspiracy to obstruct justice.

G.      **Count 58 (AcademicQuest "Consulting" Invoices for dates September30, 2007 to Feb 28, 2009)**

Count 58 charges defendant Brown (and defendant Smoot ) with obstruction of justice for knowingly altering and falsifying Academic Quest LLC invoices for dates ranging from September 30, 2007 to February 28, 2009.  The evidence will show that after auditor Maulo questioned whether the AcademicQuest management contract had been provided to the School District of Philadelphia for review and comment, and Brown produced a "consulting" contract to replace it, co-defendant Anthony Smoot, at Brown's direction, altered the Academic Quest invoices by changing the notation from "management fees" to "consulting fees."  The invoices that had previously been provided to Maulo, which were from Academic Quest to Planet Abacus, requested payment of "management fees."  Hard copies of the "consulting" fee invoices were seized during the search of 124 Bryn Mawr Avenue; an electronic version with a last modified date of February 23, 2010, was found on a computer in Smoot's office.  The evidence will show that the invoices were revised in response to Maulo's inquiry, and the subject of the inquiry was within the jurisdiction of the federal agencies who investigated this case.

H.      **Counts 61 and 62 (Emergency Loan Agreements)**

Counts 61 and 62 charge the defendant with corruptly obstructing, influencing and impeding an official proceeding by fabricating four backdated "emergency loan agreements," in violation of 18 U.S.C. §1512 (c)(2).[2]

---

[2]     To prove obstruction of justice under this statute, the government must prove that Brown acted with the intent to prevent the government from obtaining materials to which the government was entitled, pursuant to legal process in its investigation.  See Arthur Andersen LLP v. United States, 544 U.S. 696, 706 (2005) (corrupt persuasion requires proof that defendant was "conscious of wrongdoing"); United States v. Vampire Nation, 451 F.3d 189, 205 (3d Cir. 2006) (finding no error in the instructions regarding a witness tampering § 1512(b) offense).

In March 2010, in response to grand jury subpoenas requesting existing documents, Brown directed the creation of new documents and directed that they be backdated to purportedly reflect that they were created and approved by the respective boards of trustees in 2003, 2004 and 2007. The sole purpose of providing the "Emergency Loan Agreement" documents to the government was to respond to grand jury subpoenas. A federal agent conducting the investigation reviewed the documents and relied on them in making choices in the investigation.

The documents provided by Brown's lawyers to the U.S. Attorney's Office on April 1, 2010, in response to outstanding grand jury subpoenas, included two Emergency Loan Agreements, allegedly documenting that the Planet Abacus Board issued a resolution to seek a $50,000 loan from Main Line Academy in 2007 ("ELA #1"), and to seek a $75,000 loan from Laboratory in 2007 ("ELA #2"). The evidence will show that these documents were not created in 2007, as reflected on them, but created on March 25, 2010, a week before the subpoena response. Brown's counsel also produced to the government an Emergency Loan Agreement dated November 20, 2003, allegedly documenting that the Ad Prima Board issued a resolution to seek a $15,000 loan from Main Line Academy in 2003 ("ELA #3"), and an agreement dated July 2004, allegedly documenting that the Ad Prima Board issued a resolution to seek $300,000 loan from Laboratory dated July 2004("ELA #4"). One of these agreements contains the forged signature of Doris Evans.[3] The evidence will show that these documents were created on March 31, 2010 and sent via facsimile to attorneys representing the schools so that they could be

---

Section 1512 requires that the obstruction be in relation to an "official proceeding." Section 1515(a)(1)(A) defines an "official proceeding" as including a proceeding before a federal grand jury.

[3]     The other document purports contain the signature of Gladys Williams, who is now deceased.

provided in response to grand jury subpoenas. The following day, all of these agreements were produced to the government by counsel.

## II. Agreements and Stipulations

Government counsel has conferred with counsel for K-12 witness Kevin Corcoran and confirmed that Corcoran is out of the country pursuant to his military obligations, and will remain out of the country for the rest of the year. The parties agree that Mr. Corcoran is unavailable under Federal Rule of Evidence 804(a)(5), and that Corcoran's November 14, 2013 trial testimony and exhibits will be admissible in upcoming retrial under Federal Rule of Evidence 804(b)(1). The parties are exchanging designations. The government respectfully requests that the Court permit the testimony described above pursuant to Rule 804(b)(1).

The government intends to propose stipulations to the defendant regarding interstate transmission of wires and emails and other routine matters.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


   s/ Joan E. Burnes
JOAN E. BURNES
FRANK R. COSTELLO, JR.
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Trial Memorandum was served by ECF on:

Gregory P. Miller, Esquire
William M. McSwain, Esquire
Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
*Attorneys for Defendant Dorothy June Brown*


   s/ Joan E. Burnes
JOAN E. BURNES
FRANK R. COSTELLO, JR.
Assistant United States Attorneys


Dated: August 20, 2014