IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | |
|---|---|
| v. | |
| DOROTHY JUNE BROWN, et al. | Case No. 2:12-cr-00367-RBS |

**ORDER**

AND NOW, this _____ day of _____, 2014, upon consideration of the Government's Motion *in Limine* to Admit Relevant Evidence and Preclude Irrelevant Evidence and Argument (Doc. No. 333), and the response in opposition filed by Defendant Dorothy June Brown, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

_____
R. Barclay Surrick
U.S. District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Case No. 2:12-cr-00367-RBS |
| DOROTHY JUNE BROWN, et al. | |

**DEFENDANT DOROTHY JUNE BROWN'S RESPONSE IN OPPOSITION
TO THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT RELEVANT
EVIDENCE AND PRECLUDE IRRELEVANT EVIDENCE AND ARGUMENT**

**I.     INTRODUCTION**

The government's motion *in limine* is a transparent attempt to deny Dr. Brown the right to defend against the remaining charges in the superseding indictment. Unable to secure a conviction on a single count in this case after a full trial, the government's new strategy is to try to tie Dr. Brown's hands in the hope that a second jury will believe everything the government and its witnesses have to say. The government goes so far as to seek to exclude evidence that this Court already *admitted* into evidence in the first trial. The government may have trimmed some excess from the superseding indictment since the last trial, (*see* Order, Doc. No. 331), but that has no effect on the defenses that Dr. Brown is entitled to present in what is, in reality, the same case that was tried last year. Shaving approximately $225,000 from the remaining $6.3 million alleged fraud (or less than four percent) does not have nearly as much impact as the government apparently thinks. But it appears the government believes its new strategy is the only way its theories will make any sense to a jury. For the reasons stated below, the Court should reject all of the government's arguments.

## II. LEGAL STANDARDS

Relevant evidence is admissible; evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. *See* Fed. R. Evid. 401, 402. Relevance is not a high standard. *See United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007). Nevertheless, the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Evidence is unfairly prejudicial if it has an undue tendency to suggest decision on an improper basis, Fed. R. Evid. 403 advisory committee note, or if it clouds impartial scrutiny and reasoned evaluation of the facts, inhibiting neutral application of principles of law to the facts as found, *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002). This assessment is made on a sliding scale – the more probative the evidence, the greater the unfair prejudice necessary to substantially outweigh it. *See, e.g.*, *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002). The Court has discretion in deciding to admit or exclude evidence, which is construed broadly in the context of Federal Rule of Evidence 403. *See Kemp*, 500 F.3d at 295.

## III. ARGUMENT

As will be discussed in more detail below, most of the government's arguments suffer from one or two fatal flaws: (1) the government ignores the intent element of the charged crimes – as it has throughout much of this case, and (2) the government believes that its witnesses ought to be immune from challenges to their credibility. Much of the evidence that the government seeks to exclude is relevant to the elements of the charges, and Dr. Brown is entitled to put the government to its burden on each element of each charge. Additionally, much of the evidence is

relevant to other pertinent issues that are appropriate for the jury to consider, such as a witness's credibility.

A. **Evidence of Alleged Witness Tampering (Response to Motion at 2-4)**

The government wants a second bite at the apple on the charge of witness tampering, under the guise of presenting it as part of the conspiracy count. But the jury has already rejected the substantive count alleging witness tampering. Moreover, the government presents an incomplete picture of the law in this area.[1]

As the Supreme Court recognized in *Dowling v. United States*, there are circumstances where facts previously litigated and resulting in an acquittal may not be introduced in a subsequent prosecution. 493 U.S. 342, 350-52 (1990); *see also United States v. Mespoulede*, 597 F.2d 329, 335-36 (2d Cir. 1979). In the first trial, Dr. Brown argued that she did not instruct Doris Evans White to lie and instead advised her to tell the truth; the jury necessarily agreed with that argument because it acquitted Dr. Brown of witness tampering in Count 67. *See* 12/11/13 Tr. at 118:7-119:23. That is, the jury necessarily decided that Dr. Brown did not instruct Doris Ms. Evans White to lie. Because the record in this matter permits the Court to identify the fact that the jury necessarily determined in the first trial, *United States v. Irvin* and *United States v. Luken* are inapposite. In those cases, the Eleventh Circuit and D.C. Circuit, respectively, could not identify the fact necessarily determined by the first jury. *See United States v. Lukens*, 114 F.3d 1220, 1222 (D.C. Cir. 1997); *United States v. Irvin*, 787 F.2d 1506, 1515 (11th Cir. 1986).

---

[1] To the extent the government seeks to introduce evidence of witness tampering as "consciousness of guilt," a jury should certainly be informed that Dr. Brown was actually found not guilty of the alleged conduct. The prior jury rejected the government's contention that Dr. Brown encouraged Doris Evans White to make a false statement. Thus, a jury has already found that the basis for the government's supposed "consciousness of guilt" evidence does not exist.

Further, the prior jury's determination in this matter also distinguishes *United States v. Brackett*. 113 F.3d 1396 (5th Cir. 1997). In *Brackett*, the defendant had conceded much of the relevant conduct and the court concluded that the jury necessarily determined only that the defendant did not knowingly possess marijuana with intent to distribute on the particular date in question. *Id.* at 1399. The subsequent trial on conspiracy posed a different question of intent – not intent to distribute on the date in question in the first trial, but intent to join a conspiracy to violate federal narcotics laws. *Id.* at 1399-1400. Here, in contrast, the same fact would be at issue in both trials – did Dr. Brown instruct Ms. Evans White to lie to federal law enforcement officials? This is because Overt Act 31 in the conspiracy charge is the same conduct as that charged in the acquitted Count 67. The first jury concluded that Dr. Brown did not instruct Ms. Evans White to lie. And that jury was not one that lightly reached a unanimous decision; it was deadlocked on the majority of the counts against Dr. Brown. The fact that it unanimously agreed on the witness tampering count confirms that it did not believe Dr. Brown engaged in the alleged conduct.

Further, the government's argument regarding a lower standard of proof could result in this Court admitting evidence that would require a *third* trial, should Dr. Brown be convicted of conspiracy. Not only must the jury unanimously agree beyond a reasonable doubt that Dr. Brown intended to obstruct justice, it also must conclude, unanimously and beyond a reasonable doubt, that at least one defendant committed at least one overt act. 12/12/13 Tr. at 52:11-53:5 (instructing jury that it must find one overt act beyond a reasonable doubt *and* must unanimously agree on the overt act). A second jury cannot find that Dr. Brown engaged in witness tampering to obstruct justice beyond a reasonable doubt as an overt act when a prior jury reached the opposite conclusion by the same standard of proof. That is precisely the result *Dowling* warned

should be foreclosed. *See Dowling*, 493 U.S. at 350-51. If evidence of alleged witness tampering were permitted as an overt act, there would be no way to tell whether the new jury relied on it as the unanimous overt act supporting the conspiracy.[2] Thus, the entire verdict would be tainted. The government's insistence in seeking admission of this evidence, when there are already fifteen (15) other overt acts alleged, could make a complete mess of the second trial.[3] The Court should reject the government's request for a second bite at the apple, which would infect the entire trial.

### B. Verdicts in the Prior Trial (Response to Motion at 4-5)

The government's argument to exclude the acquittals of Dr. Brown, Courteney Knight, and Michael Slade conflates the different circumstances for Dr. Brown, on the one hand, and Mr. Knight and Mr. Slade, on the other.

As to Dr. Brown, it is ironic that the government wants to introduce evidence of alleged witness tampering while at the same time withholding the fact that Dr. Brown was found not guilty of that offense by a federal jury. The government's cited authority on federal court follow-on trials to unsuccessful state court trials is inapposite. A *federal* jury rejected the allegations of witness tampering, and if the government wants to introduce the evidence, it is only fair that the jury know that another jury previously acquitted Dr. Brown of that conduct.

---

[2] The government contends that the Fifth Circuit's *Brackett* decision permits this evidence because of a supposedly lower standard of proof to introduce evidence of overt acts. Both the government and *Brackett* overlook the fact that the jury must unanimously find one overt act beyond a reasonable doubt, as the Court instructed at the first trial.

[3] This number does not include the overt acts that correspond to the overt acts allegedly committed by Courteney Knight and Michael Slade, for which they were acquitted. Superseding Indictment, Count 53 at ¶¶ 23, 28, 31. The same taint described above would result from admission of that evidence. The government apparently recognizes this is the correct result because it does not seek admission of conduct related to Count 59 and alleged as an overt act, of which both Mr. Slade and Dr. Brown were acquitted. *Id.* at ¶ 23.

Mr. Knight's acquittals are relevant to several issues, particularly his credibility. Mr. Knight would be transitioning from an indicted co-conspirator and co-defendant at the first trial, to a government witness in the next. Neither case cited by the government addresses these circumstances; rather, each addresses a *defendant's* acquittal at a prior trial – not the witness's acquittal. Moreover, neither addresses a witness who was previously indicted with the defendant as a co-conspirator. The closest case on point is *Kentucky ex rel. Chandler v. Louis Trauth Dairy*, No. 96-6654, 1998 U.S. App. LEXIS 7743 (6th Cir Apr. 16, 1998) (per curiam). The defendant, a business, sought to introduce evidence that a competitor's employees testified in an earlier criminal proceeding, in which the company was acquitted. The Sixth Circuit found no error in admitting the testimony to support the company's allegations that the witnesses were motivated by bias or motive to testify against the defendant in a follow-on civil action. Here, Mr. Knight was under indictment for years and had to go through a lengthy trial in federal court. He could have developed animosity toward Dr. Brown if he blames her for getting him involved in what the government contends is criminal conduct. That would provide ample motive for Mr. Knight to testify against Dr. Brown now that he is no longer under indictment with her. It also suggests that he may be biased against Dr. Brown. Those are issues that the jury is clearly entitled to hear to determine Mr. Knight's credibility.

Mr. Knight's acquittal of those charges is also relevant and admissible evidence because Mr. Knight is now in nearly identical circumstances as two other government witnesses – Anthony Smoot and Joan Woods Chalker. The only difference is that Mr. Knight was acquitted, whereas the other two have pled guilty. Dr. Brown is, of course, permitted to cross-examine Mr. Smoot and Ms. Chalker about (1) the fact that they were indicted, and (2) the status of the charges, *i.e.*, that they have pled guilty and are cooperating witnesses, to impugn their credibility.

The government identifies is no reasonable distinction for Mr. Knight. He, too, was indicted and he, too, has a questionable motive for testifying, which should be admissible for the reasons stated above. The government does not contend that the fact that Mr. Knight was indicted alongside Dr. Brown and others is inadmissible. Failing to complete the story for the jury (*i.e.*, that Mr. Knight was acquitted), when the resolution for Mr. Smoot and Ms. Chalker will be admitted, would be even more confusing for the jury than informing them that Mr. Knight was acquitted. *Cf. United States v. Benjamin*, 711 F.3d 371, 380 (3d Cir.) (permitting admission of evidence that provides "helpful background"), *cert. denied*, 134 S. Ct. 309 (2013); *United States v. Green*, 617 F.3d 233, 249-50 (3d Cir. 2010) (finding no error where district court admitted evidence to "complete[] the story").

Relatedly, Dr. Brown has no need to introduce the acquittal of Mr. Slade, but reserves the right to do so if the government opens the door or attempts to offer Mr. Slade as a witness against Dr. Brown.

### C. Character Traits Other Than Honesty, Truthfulness, and Law-Abiding Nature (Response to Motion at 5-10)

This issue is not new; the parties argued the permissible scope of this evidence before the first trial, and the Court deferred ruling on these issues to make its decision in the context of trial. The same result is appropriate again because much of the evidence of "good acts" that Dr. Brown would seek to introduce depends on the evidence that the government presents.

As explained before, prior good acts are admissible under Rule 404(b) to show the defendant's intent, so long as (1) the evidence is relevant, (2) its probative value outweighs any prejudicial impact under Rule 403, and (3) the court offers a limiting instruction to explain to the jury how to use the evidence. *United States v. Hayes*, 219 F. App'x 114, 116 (3d Cir. 2007) ("As is true with bad act evidence, *evidence of good acts is also admissible* for a proper purpose such

as motive, *intent*, absence of mistake, etc." (emphasis added)); *see also* Fed. R. Evid. 404(b) (permitting evidence of "other act[s]" for, *inter alia*, motive or intent).

Where the issue is "the existence of a criminal purpose to defraud and a scheme to defraud," it is error to exclude testimony regarding honesty in other transactions. *See United States v. Garvin*, 565 F.2d 519, 521 (8th Cir. 1977); *see also United States v. Quality Formulation Labs., Inc.*, 512 F. App'x 237, 240 (3d Cir. 2013) ("Some evidence of earlier 'good acts' evidence may be admissible to show a defendant lacked wrongful intent in later behavior."). Evidence of Dr. Brown's prior good acts is relevant to whether she acted with criminal intent as alleged in the superseding indictment, which is the crucial issue in this case. *See United States v. Shavin*, 287 F.2d 647, 654 (7th Cir. 1961) (finding that because intent to defraud and good faith were at issue in mail fraud prosecution, defendant was "entitled to negate the fraudulent intent," and the trial court erred by denying opportunity to prove veracity of other transactions); *cf. Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 524 (3d Cir. 2003) (approving admission of testimony of favorable treatment to create inference that employer lacked discriminatory intent).

For instance, as Dr. Brown previously explained, Dr. Brown anticipates that the government will attempt to introduce evidence that she provided various instructions to certain witnesses regarding school records and interviews with the government. Indeed, the government did so in the first trial, and the government's recently-produced Form 302 for Mr. Knight suggests they intend to do the same again. Dr. Brown may, for example, attempt to (a) elicit other instructions she provided that undermine the government's theories, (b) demonstrate that the witness was not forthcoming either in interviews with the government or at trial (undermining the witness's credibility), and (c) demonstrate that the investigators' notes or

reports are biased (undermining the investigators' credibility). *See, e.g.*, *United States v. Reilly*, 33 F.3d 1396, 1410 (3d Cir. 1994) ("'Instructions to an individual to do something are . . . not hearsay,' because they are not declarations of fact and therefore are not capable of being true or false." (citation omitted)); *United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989) ("[C]redibility, like the testimony of any witness, [is] subject to the crucible of cross-examination and [is] within the exclusive province of the jury. The veracity of a claim that certain statements were made [is] subject to evaluation like any other testimony presented at trial. That evaluation [is] for the jury."). This is the type of evidence contemplated in cases like *Hayes*, *Shavin*, and *Garvin*. The government – again – does not identify any unfair prejudice, confusion, or potential for misleading that would result from this evidence, which negates the government's contention that Dr. Brown acted with criminal intent.

In addition, as addressed in motion practice prior to the first trial, opinion witnesses are permitted to establish a foundation for their opinion of the defendant and, if the government opens the door on cross examination by inquiring into specific instances of bad conduct, the defendant is permitted to rehabilitate the witness by inquiring about specific instances of good conduct. *See United States v. Manfredi*, No. 07-352, 2009 U.S. Dist. LEXIS 104190, at *16-17 (W.D. Pa. Nov. 9, 2009) (permitting defendant to elicit basis for character witness's opinion); *United States v. Fiorito*, No. 07-212, 2009 U.S. Dist. LEXIS 34613, at *9-10 (D. Minn. Apr. 22, 2009) ("Only if the government were to 'open the door' by cross-examining a character witness about specific instances of unlawful or dishonest conduct would [the defendant] be able to respond by asking the witness, on redirect, about specific instances of lawful or honest conduct.").

Evidentiary issues of this nature are more appropriately determined in the context of the trial. The government's motion should be denied.

### D. Specific Acts at Other Schools and Test Scores (Response to Motion at 7-15)

According to the government, relevance is defined by the parameters of the case that the government intends to present, rather than by Rules 401 and 402. In particular, the government contends that this case is about allegedly forged or fabricated documents and, therefore, any evidence that does not tend to prove or disprove the alleged forgery or fabrication is irrelevant and inadmissible. The government is obviously wrong about that.

The government's position ignores several important facts about this case: (1) the superseding indictment alleges much more; (2) the government must prove each element of each charge beyond a reasonable doubt; (3) the government is ignoring the intent element; and (4) the Court already admitted much of the evidence at an earlier trial on virtually the same charges. Simply stated, this case is not – and never could be – limited to just Agora and Planet Abacus.

Further, the government's approach to the evidence of the other schools is entirely misguided. This is not character evidence; it is evidence that negates criminal intent. And even though the government may want to discuss only allegedly forged or fabricated documents, it must still prove criminal intent, and Dr. Brown intends to defend that and other crucial issues in this case. The superseding indictment alleges that Dr. Brown received money under allegedly false contracts and provided little or no services in return. *See* Superseding Indictment, Counts 1-14 at ¶ 29. The government took similar positions at the first trial and in opposing Dr. Brown's motion for acquittal. *See, e.g.*, 11/06/13 Tr. at 52:13-23; Response of the United States in Opposition to Defendant Dorothy June Brown's Motions for Judgment of Acquittal at 27-30

(Doc. No. 307). And the Court relied on those arguments to deny Dr. Brown's motion for acquittal. *See, e.g.*, July 31, 2014 Memorandum at 11 n.10 (Doc. No. 328).

In its Motion, the government now downplays its charged theory that Dr. Brown failed to provide services. But that does not change the fact it is alleged in the superseding indictment and it does not change the law that intent to provide agreed-to services negates criminal intent. *See United States v. Starr*, 816 F.2d 94, 98, 101 (2d Cir. 1987) (noting government "los[t] sight" of the important distinction that an alleged misrepresentation "must be coupled with a contemplated harm to the victim"); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181-82 (2d Cir. 1970) (finding no intent to defraud where "the falsity of [defendants'] representations was not shown to be capable of affecting the customer's understanding of the bargain nor of influencing his assessment of the value of the bargain to him"). The government does not get to define the scope of Dr. Brown's relevant defenses by trying to narrow the scope of its theory, particularly where the Court previously admitted the *same* evidence in defense of the *same* charges in the *same* superseding indictment. The Court should reject the government's transparent attempt to manipulate the scope of Dr. Brown's defenses before the trial even starts.

Moreover, the government may have dropped any remaining wire fraud charges directly related to Laboratory, but there remain charges in the indictment that relate to more than just Agora or Planet Abacus. For instance, the manner and means and overt acts in the conspiracy count include references to Main Line Academy, Laboratory, and Ad Prima. Each of these overt acts is also charged in a corresponding obstruction of justice count that remains pending. *See* Superseding Indictment, Counts 57, 61, and 62. In addition, the government's motion *in limine* regarding the witness tampering charge confirms that the government believes that the alleged overt acts are admissible at re-trial. If the government really thought that these schools were

irrelevant, it would have moved to dismiss these counts as well and would have moved to strike these allegations from the superseding indictment. The government's unwillingness to do so demonstrates the continued relevance of these schools.

Even if the government were to dismiss these counts and strike the related allegations – something the government has shown no interest in doing – the evidence that the government seeks to preclude would still be relevant to the remaining wire fraud charges. For instance, the government alleges that Dr. Brown provided no services to Agora. One example of her services is that she augmented the K12 curriculum with a science program developed at Laboratory. The success of that program and the value to Agora is most concretely demonstrated by the achievements of the students at Dr. Brown's schools. And it is the curriculum that is the foundation of those test results. That curriculum was developed by Dr. Brown during her career at Main Line, Laboratory, and Ad Prima, before founding Agora and Planet Abacus. These were denominated "Charter Signatures," and permeated her charter schools. The reason why Agora and Planet Abacus contracted with her management companies is because of the value, experience, and success that come with Dr. Brown's programs. Test scores are obviously the most concrete presentation of that value. This much is clear from the precipitous drop in test scores at Agora after K12's conspiracy succeeded in ousting Dr. Brown and Cynwyd. Thus, the test scores are relevant in at least two ways: (1) they tend to prove that Agora and Planet Abacus had a reason to contract with Dr. Brown's management companies, supporting the argument that the schools' boards did in fact contract with Cynwyd and AcademicQuest and did so because of Dr. Brown's success, and (2) they tend to disprove that Dr. Brown acted with intent to defraud.

Furthermore, the test scores at Agora demonstrate that Dr. Brown reasonably believed she had an agreement with Agora. The evidence at trial showed that Dr. Brown was engaged in

efforts to improve Agora's test scores. She did this by ensuring K12 met its contractual obligations, because that was *her* contractual obligation. The test scores from her other schools also show why she was so upset about Agora's performance and K12's efforts – her other schools had much better test results. Predictably, following her ouster by a K12-led conspiracy, Agora's test scores dropped dramatically. Thus, the schools' test scores are relevant and important evidence, regardless of whether the government introduces evidence of Dr. Brown's salaries from her schools.

For these reasons, the Court should deny the government's motion with respect to the schools' test scores and Dr. Brown's other acts, and permit Dr. Brown to use this evidence to support her relevant defenses, as the Court properly permitted in the first trial.

### E. Opening Statement (Response to Motion at 15-18)

Dr. Brown's opening statement at the re-trial will be limited to the evidence that Dr. Brown anticipates the government will introduce and the evidence that the defense presently intends to introduce. Dr. Brown presumes the government will do the same. The government does not identify any basis that would oblige Dr. Brown, at this time, to state whether or not she intends to exercise her right to testify on her own behalf.

## IV. CONCLUSION

For the foregoing reasons, Defendant Dorothy June Brown respectfully requests that the Court deny the government's motion *in limine* in its entirety.

Respectfully submitted,

Dated:  September 3, 2014

/s/ Gregory P. Miller
Gregory P. Miller (PA Id. No. 24891)
William M. McSwain (PA Id. No. 86499)
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA  19103-6996
(215) 988-2700
(215) 988-2757 Fax
Gregory.Miller@dbr.com
William.McSwain@dbr.com

*Attorneys for Defendant Dorothy June Brown*

# CERTIFICATE OF SERVICE

      I, Todd N. Hutchison, hereby certify that on this day I caused a true and correct copy of the foregoing Response in Opposition to the Government's Motion *in Limine* to Admit Relevant Evidence and Preclude Irrelevant Evidence and Argument to be filed electronically, and to be thereby served upon counsel listed below:

Joan E. Burnes, Esq.
Frank R. Costello, Esq.
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

*Counsel for United States of America*

Dated: September 3, 2014             /s/ Todd N. Hutchison
                                                               Todd N. Hutchison